STATE of Missouri, Plaintiff–
Respondent,

v.

Jametric MILLER, Defendant–
Appellant.

No. 25777.

Missouri Court of Appeals,
Southern District,
Division Two.

July 30, 2004.

Margaret M. Johnston, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Eaton, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Judge.

Jametric Miller ("Defendant") was charged by amended information with the class B felony of possession of cocaine base, a controlled substance, with intent to distribute in violation of § 195.211.[1] A jury found Defendant guilty of this offense. Because he was a persistent misdemeanor offender, the trial court determined punishment and sentenced Defendant to a term of ten years imprisonment. *See* § 558.016; § 557.036.4(2). This appeal presents a single point for our determination. Defendant contends the trial court committed plain error in two respects: (1) admitting Defendant's statements concerning his intent to sell cocaine base ("crack"); and (2) overruling Defendant's motion for judgment of acquittal at the close of all of the evidence. The basis for this contention is that the State failed to present independent proof to establish the *corpus delicti* of possession of a controlled substance with the intent to distribute. We affirm.

## I. Standard of Review

The gist of Defendant's appeal is that there was insufficient evidence to support his conviction. He reaches this conclusion by relying on a four-pronged argument: (1) there was not enough independent proof presented to establish the *corpus delicti* of the crime of possessing crack with the intent to distribute; (2) absent such independent proof of the *corpus delicti*, his confession to police officers that he intended to sell the crack should not have been admitted in evidence; (3) without his confession, the remaining evidence adduced at trial was insufficient to support his conviction; and (4) therefore, the trial court should have sustained Defendant's motion for judgment of acquittal filed at the close of all the evidence.

Defendant concedes that he did not object to the admission of his confession at trial, and he failed to include this claim of error in his motion for new trial. Therefore, this issue is not properly preserved for appeal and may only be reviewed for plain error. *See State v. Chavez,* 128 S.W.3d 569, 577 (Mo.App.2004); *State v. Emmert,* 91 S.W.3d 177, 180 (Mo. App.2002). In order to be entitled to relief under the plain error rule, "[a] defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected." *State v. Deckard,* 18 S.W.3d 495, 497 (Mo. App.2000). The burden of proving the existence of such a manifest injustice or miscarriage of justice rests on defendant. *See State v. Cole,* 844 S.W.2d 493, 500 (Mo. App.1992). A request for plain error review requires us to go through a two-step

---

1. All references to statutes are to RSMo (2000).

analysis. *State v. Stanley,* 124 S.W.3d 70, 77 (Mo.App.2004). We first determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial grounds are found to exist, we then determine whether a manifest injustice or a miscarriage of justice has actually occurred. *Id.*

When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court gives great deference to the trier of fact. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998). Reliability and credibility are issues for the jury. *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990). Therefore, we accept as true all evidence tending to prove the defendant's guilt, together with inferences favorable to the State that can be reasonably drawn therefrom; we disregard all contrary evidence and inferences. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Webber,* 982 S.W.2d 317, 324 (Mo.App. 1998).

The evidence favorable to the State that we consider in determining sufficiency includes that presented by Defendant during his case. "When a defendant introduces evidence on his own behalf, after the overruling of his motion for judgment of acquittal at the close of the State's case, the sufficiency of the evidence must be determined upon the entire record considering any incriminating evidence developed during the defendant's case." *State*

*v. Rivers,* 554 S.W.2d 548, 550 (Mo.App. 1977); *see also State v. Parcel,* 546 S.W.2d 571, 573 (Mo.App.1977). The same holds true for Defendant's assertion that the State failed to present sufficient independent evidence of the *corpus delicti.* The State's proof is sufficient if the essential elements of the crime were proven by the end of the trial. *See State v. Evans,* 992 S.W.2d 275, 285 (Mo.App.1999); *State v. Page,* 580 S.W.2d 315, 318–19 (Mo.App. 1979); *State v. Easley,* 515 S.W.2d 600, 602–03 (Mo.App.1974). We have utilized these principles to prepare the following summary of the evidence presented at trial.

## II. Facts and Procedural History

On the afternoon of October 17, 2002, Defendant and Al Miller ("Al") were together in a section of Poplar Bluff known as "the Hill." [2] This is an area of the city where illegal drugs, including crack, are so frequently sold and used that the Poplar Bluff Police Department received a $100,000 Department of Justice grant for enhanced police patrols and drug enforcement arrests in this specific part of town.[3] Defendant purchased 2.09 grams of crack from a person named Joey and hid the drugs inside his pants. Defendant and Al then went to a store, and Al purchased a drink, some candy and a box of 150 sandwich baggies.

After Defendant and Al left the store, they walked down Garfield Street and turned onto Alice Street. Once they turned the corner, they were seen by several Poplar Bluff drug enforcement officers who had parked their cars at the intersection of Alice and Jefferson Streets

**2.** Since Defendant and Al Miller have the same surname, we refer to Al by his given name. We do so for purposes of clarity and intend no disrespect.

**3.** The Hill was designated a "weed and seed" target area. Statistics concerning all arrests in this part of town were sent to the Department of Justice.

and were engaged in arresting other persons for drug offenses. Defendant and Al were stopped by the officers, one of whom discovered the unopened box of sandwich baggies in Al's possession and laid it on top of one of the police cars. Defendant was approached by another officer, Corey Mitchell ("Officer Mitchell"), who engaged in small talk with Defendant. Officer Mitchell asked Defendant if he had anything on him, and Defendant said, "I don't have anything on me. Go ahead and search me."

During the search, Officer Mitchell discovered the bag of crack, which Defendant had hidden between the cheeks of his buttocks inside his pants. Defendant was then arrested. This took place within 15 minutes of the time Defendant purchased the crack. Further search of his person revealed that he also had cigarettes, a lighter and some money. Although crack is usually ingested by smoking it in a pipe, Defendant did not have a crack pipe in his possession. The amount of crack seized from Defendant exceeded the amount Officer Mitchell would normally find on someone who was holding the drug for their personal use. The quantity of crack in Defendant's possession could be broken down and resold as individual "rocks" that cost $20 to $50. Such individual rocks are usually packaged in small pieces of plastic, such as sandwich baggies, by being tightly knotted inside the plastic and then clipped off.

Officer Mitchell placed Defendant in a police car and transported him to the police station for booking. During the trip, Defendant was advised of his *Miranda* rights, which he voluntarily waived.[4] When Officer Mitchell asked Defendant if the substance in the bag was crack, he responded, "It better be." Defendant said he had paid $80 for the crack and was going to make $200 on it. He and Al intended to break down the crack into smaller quantities and use the sandwich baggies to package the drug for resale. Defendant identified the person who sold him the drugs and described his vehicle to Officer Mitchell.

When Defendant arrived at the station, he was booked. The booking room of the police station is equipped with audio and video recording equipment, which was operating during part of the time Defendant was being booked. On the videotape, Defendant repeated much of what he had said to Officer Mitchell during the trip by car to the station.

At trial, Defendant admitted he was guilty of knowingly possessing crack. His position was that he only bought the crack for his own personal use, and he did not intend to resell any of it. His contrary, incriminating statements were presented through the testimony of Officer Mitchell and the playing of the booking videotape. Defendant did not object to the admission of his statements on either occasion. His attorney did file a motion for judgment of acquittal at the close of the State's evidence and at the close of all of the evidence. Both motions, which were overruled, alleged that the evidence failed to establish the *corpus delicti.*

The case was submitted to the jury with instructions authorizing the return of a guilty verdict for possession of crack with the intent to distribute and the lesser-included offense of possession of crack. The jury found Defendant guilty of the more serious offense.

In Defendant's motion for new trial, there was no specific allegation of error that his incriminating statements were improperly admitted because the *corpus de-*

---

4. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*licti* of the crime had not been established. The motion was overruled, and the aforementioned judgment of conviction and sentence was entered by the trial court. Defendant filed a timely notice of appeal.

### III. Discussion and Decision

The foundation for Defendant's point on appeal is that his incriminating statements should not have been admitted because the State failed to establish the *corpus delicti* of the crime of possession of a controlled substance with intent to distribute. If this prong of his argument fails, the remainder are moot. Therefore, we address this contention first.

Since Defendant's challenge to the admissibility of his incriminating statements was not properly preserved for appeal, we may review for plain error only. Before plain error review is even appropriate, we first must determine that Defendant's asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *See State v. Rhodes,* 988 S.W.2d 521, 526 (Mo. banc 1999); *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995).

It is a truism that, for there to be a conviction of a crime, proof must be presented showing a crime was actually committed. *See State v. Howard,* 738 S.W.2d 500, 504 (Mo.App.1987). *Corpus delicti* is a Latin phrase meaning "body of the crime" and refers to the elements of the particular criminal offense charged. *State v. Londagin,* 102 S.W.3d 46, 51 (Mo. App.2003); Black's Law Dictionary 346 (7th ed.1999). The *corpus delicti* cannot be presumed and must be proved by legal evidence sufficient to show that the specific crime charged has actually been committed by someone. *State v. Summers,* 362 S.W.2d 537, 542 (Mo.1962). The *corpus delicti* rule is essentially evidentiary in nature because it determines whether the defendant's confession of guilt may be considered substantive evidence of guilt. *See State v. Culbertson,* 999 S.W.2d 732, 736 (Mo.App.1999). "Extrajudicial statements, admissions or confessions, are both inadmissible and insufficient to sustain a conviction unless there is independent proof, direct or circumstantial, of the essential elements of the corpus delicti." *State v. Garrett,* 829 S.W.2d 622, 626 (Mo.App. 1992).

It is important to note, however, that the *corpus delicti* rule does not preclude all use of a defendant's confession in determining whether the elements of an offense have been proved. "[I]t is equally well established that full proof of the corpus delicti independent of the defendant's extrajudicial confessions is not required." *State v. Nicks,* 883 S.W.2d 65, 68 (Mo.App. 1994). "If there is evidence of corroborating circumstances independent of the confession, which tends to prove the offense by confirming matters related in the confession, both the corroborating circumstances and the confession may be considered in determining whether or not the corpus delicti has been established." *City of St. Louis v. Watters,* 289 S.W.2d 444, 446 (Mo.App.1956); *see also State v. Howard,* 738 S.W.2d 500, 504 (Mo.App.1987); *Kansas City v. Verstraete,* 481 S.W.2d 615, 617 (Mo.App.1972). Thus, "[t]he substantive offense is sufficiently proven by independent evidence of circumstances that correspond and interrelate with the circumstances rendered in the statement or confession." *State v. Hammons,* 964 S.W.2d 509, 512 (Mo.App.1998). Only "slight corroborating facts" are needed to authorize the admission of a defendant's incriminating statements in evidence. *See State v. Thompson,* 333 Mo. 1069, 64 S.W.2d 277, 282 (1933); *State v. McGuire,* 327 Mo. 1176, 39 S.W.2d 523, 525 (1931).

In the case at bar, Defendant was charged with possession of a controlled substance with intent to distribute. The *corpus delicti* of this crime requires proof of "the presence of the controlled substance in such circumstances as would warrant the conclusion that it had been in the knowing possession of some person who had the intent to deliver it." *State v. Sutherland*, 11 S.W.3d 628, 631 (Mo.App. 1999). Defendant admitted in his own testimony at trial that he was knowingly in possession of crack when he was arrested. The only issue is whether the State presented independent evidence of "slight corroborating facts" showing Defendant intended to distribute the crack so as to make admissible Defendant's incriminating statements to the same effect.

We believe Defendant's intent to distribute was sufficiently shown by the following evidence, independent of his confession: (1) he and Al went to "the Hill" where crack was frequently bought and sold; (2) Defendant bought a larger quantity of crack than a person would ordinarily possess for his own personal use; (3) this quantity of crack was large enough to be broken down and repackaged for resale in individual rock size; (4) immediately after Defendant bought the crack, he and Al went to a nearby store where 150 sandwich baggies were purchased; (5) the baggies were a type of plastic material commonly used to wrap individual rocks of crack for resale; (6) Defendant was arrested in "the Hill" area within 15 minutes of buying the crack; and (7) Defendant did not have in his possession a crack pipe that would have allowed him to make personal use of the drug by smoking it. This evidence is more than sufficient to constitute the "slight corroborating facts" necessary to authorize the admission of Defendant's incriminating statements in evidence. These independent facts correspond and interrelate with the incriminating statements in Defendant's confession to police that: (1) he had paid $80 for the crack; (2) he and Al intended to break down the crack into smaller quantities and use the sandwich baggies to package the drug for resale; and (3) Defendant was going to make $200 by reselling the crack.

Considering the independent evidence adduced during the trial along with Defendant's confession, the *corpus delicti* of the crime was proven because there was evidence that Defendant possessed crack, a controlled substance, with the intent to distribute it. Therefore, the trial court did not err in admitting Defendant's incriminating statements in evidence. Defendant has not met his burden of establishing facially substantial grounds for believing that a manifest injustice or miscarriage of justice might have occurred in his case. Therefore, we decline to exercise the discretion afforded us by Rule 30.20 to engage in plain error review. *See State v. Campbell*, 122 S.W.3d 736, 742 (Mo.App. 2004). The judgment of the trial court is affirmed.

PARRISH, J. and SHRUM, J., concur.